FILED

2024 Mar-01  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Youlanda Arrington,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.: 2:23-cv-01744-AMM** |
| **v.** ) | |
| ) | **Opposed** |
| **Midland Credit Management, Inc.,** *et* ) | |
| *al.,* ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S OPPOSED MOTION FOR JUDGMENT ON THE PLEADINGS AND <u>MEMORANDUM OF LAW IN SUPPORT</u>

Plaintiff Youlanda Arrington's ("Arrington") sole claim—a Fair Debt Collection Practices Act ("FDCPA") count[1]—is based on her allegation that Defendant Midland Credit Management, Inc. ("Midland") mailed a supposed debt collection letter to her after she sent a request to Midland that "stated that only communication by text or email was convenient[.]"[2]  However, because the "animating purpose" of Midland's response letter was not "to induce payment [on her underlying debt]"—but rather, to acknowledge Arrington's request and inform her that it would abide by her preferences—Midland's letter was not an attempt to

---

[1] *See* Doc. 1 at p. 12, ¶¶ 23-24.  The FDCPA is codified at 15 U.S.C. §§ 1692, *et seq.*

[2] Doc. 1 at p. 10, ¶ 16; *see id.* at p. 11, ¶ 17.

collect a debt under the FDCPA, and therefore her complaint fails to state a legally cognizable claim under the FDCPA. *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-01831-MHH, 2017 WL 3315375, at *6 (N.D. Ala. Aug. 3, 2017) (quotations omitted) (bracketed text added).[3]  For this and other reasons discussed more fully below, Arrington's FDCPA claim against Midland should be dismissed as a matter of law.

Pursuant to Federal Rule of Civil Procedure 12(c), Midland respectfully requests that this Court enter judgment on the pleadings in its favor as to the lone count asserted against it for failure to state a claim upon which relief can be granted. In further support of this motion, Midland states as follows:

### Factual Allegations

According to Arrington's complaint, Midland instituted "collection activities against [her]" regarding a defaulted debt that she had incurred and ultimately owed to Midland.[4]  And, sometime after Midland commenced said "collection activities" against her, Arrington claims that she sent a letter to Midland[5] stating (i) "that only

---

[3] *See also Dyer v. Select Portfolio Servicing, Inc.*, 108 F.Supp.3d 1278, 1282 (M.D. Fla. 2015) ("Defendant's intent in sending the letters[] does not appear to be to collect the debt or induce Plaintiff to settle the debt.  Rather, **the letters were sent to provide Plaintiff with information**.") (emphasis added).

[4] Doc. 1 at p. 10, ¶ 14; *see id.* at p. 10, ¶¶ 9, 12-13.

[5] Doc. 1 at p. 10, ¶ 15.  *See also* Ex. 1 (a copy of Arrington's above-referenced letter to Midland is attached to this motion as Exhibit 1).  Because Arrington's complaint repeatedly references and otherwise relies upon her letter to Midland, this Court may consider her letter without converting this motion for judgment on the pleadings into a motion for summary judgment. *See, e.g., Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir.

communication by text or email was convenient, and all other forms of communication were not convenient[;]"[6] and (ii) that she was not making "a request for validation or verification [of the debt]."[7]

The crux of Arrington's lawsuit is that Midland responded to her form letter via "a letter which [was] a communication about [her underlying] debt and was an attempt to collect the debt[.]"[8]  Importantly, however, Midland's letter did not demand payment from Arrington, contained no discussion regarding terms of payment or deadlines, repeatedly provided Arrington with information regarding her account, and explicitly stated:

> In the meantime, as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications.

Ex. 2 (Midland's letter to Arrington) at p. 1.  Midland's response letter constitutes the entire basis of this litigation—*i.e.*, Arrington claims that when Midland sent its

---

1997) (holding that, where plaintiffs referred to certain documents in their complaint and where such documents were central to plaintiffs' claims, such documents could be considered as part of the pleadings without converting a Rule 12 dismissal motion into a Rule 56 motion for summary judgment).  *C.f., e.g.*, Doc. 1 at p. 10, ¶¶ 15-16.

[6] *Id.* at p. 10, ¶ 16.  *See also* Ex. 1.

[7] *Id.* at p. 11, ¶ 19.  *See also* Ex. 1.  Notably, the wording of Arrington's letter is nearly identical to hundreds (or even thousands) of communications that have been sent to creditors across the across the county in recent months with the goal of generating FDCPA lawsuits.

[8] *Id.* at p. 11, ¶ 17 (emphasis removed).  *See also* Ex. 2 (a copy of Midland's response letter to Arrington is attached to this motion as Exhibit 2).  Again, given that Arrington's complaint repeatedly references and otherwise relies upon Midland's response letter, this Court may consider Midland's letter at this Rule 12 stage.  *See, e.g.*, *Brooks*, 116 F.3d at 1369; *c.f., e.g.*, Doc. 1 at p. 11, ¶¶ 17-18.

aforementioned response letter, it violated various sections of, "along with Regulation F" concerning, the FDCPA.[9]  As explained below, however, Arrington's coordinated effort to generate a technical violation fails on multiple grounds, and Arrington's complaint fails to state a claim upon which relief can be granted.

### Applicable Legal Standard

Where a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based upon a complaint's failure to state a claim upon which relief can be granted, the same standards apply as under Federal Rule of Civil Procedure 12(b)(6).  *See Riley v. Gen. Motors Acceptance Corp.*, No. 01-0869-CG-S, 2002 WL 32932411, at *1 (S.D. Ala. Nov. 8, 2002) (citation omitted).  In order to survive a Rule 12 motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the "plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*  Moreover, if a plaintiff's allegations are just as compatible with lawful as unlawful conduct, the complaint "must plead 'enough facts to state a claim that is plausible on its face.'

---

[9] Doc. 1 at p. 12, ¶ 23.

4

Unless a plaintiff has 'nudged [her] claims across the line from conceivable to plausible,' the complaint 'must be dismissed.'" *Id.* at 547.

**Argument and Citations to Authority**

This is a fairly simple and straightforward case—*i.e.*, Arrington claims that Midland violated the FDCPA by mailing a "debt collection" letter to her roughly two weeks after she asked Midland to not contact her via U.S. Mail or over the phone.[10]  However, Arrington's complaint—straightforward though it may be—fails to articulate an actual violation of the FDCPA for several reasons.  First, the plain statutory text of the FDCPA does not speak in material fashion to any prohibition regarding the *medium* of communication from a collector.  *Cf.* 15 U.S.C. § 1692c(a)(1) (providing that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual **time or place** or a **time or place** known or which should be known to be inconvenient to the consumer") (emphasis added).  Even if the FDCPA allowed for Arrington's preferences, Midland's response letter does not fall within its ambit; the "animating purpose" of Midland's letter was not to elicit payment on the debt.  *See, e.g.*, *McWhorter*, 2017 WL 3315375 at *6.  Further, Arrington's reliance on the Consumer Financial Protection Bureau's (the "CFPB") "Regulation F"—*i.e.*, 12 C.F.R. §§ 1006.1, *et seq.*—is ineffective as that regulation does not "provide for a

---

[10] *See* Doc. 1 at pp. 10-11, ¶¶ 15-22.

5

private cause of action." *Doss v. Citizens Savings and Trust Co.*, No. 3:19-0265, 2020 WL 9935823, at *4 (M.D. Tenn. Jan. 3, 2020), *report and recommendation adopted sub nom.* 2020 WL 13644756 (M.D. Tenn. Feb. 26, 2020).  As such, Arrington's complaint is due to be dismissed.

I.    **Midland is entitled to judgment on the pleadings because Arrington's complaint fails to state a legally cognizable claim under the FDCPA.**

    A.    **The unambiguous statutory text of the FDCPA does not speak materially to any specific medium of communication.**

The FDCPA prohibits a debt collector from communicating "with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1).  Notably, though, neither subsection 1692c nor any other subsection of the FDCPA materially speaks to the medium—*e.g.*, written letter, text message, email, etc.—by which a collector might communicate with a consumer. *Cf., e.g.*, *id.*  Thus, in employing the "traditional tools of statutory construction[,]" this Court need not go any further than the unambiguous text of the FDCPA itself when determining that Arrington's complaint—which, again, is based on the medium of Midland's communication (rather than the time or place of communication)[11]—does not state a viable claim under the FDCPA:

> When we construe a statute, "we must begin, and often should end as well, with the language of the statute itself."  [*Harry v. Marchant*, 291

---

[11] *See, e.g.*, Doc. 1 at p. 10, ¶ 16.

F.3d 767, 770 (11th Cir. 2002) (en banc)] (quotations omitted).  This is
because "we presume that Congress said what it meant and meant what
it said."  *Id.* (quotations omitted).  "Those who ask the courts to give
effect to perceived legislative intent by interpreting statutory language
contrary to its plan and unambiguous meaning are in effect asking
courts to alter that language, and **courts have no authority to
alter statutory language**.  .  .  .  **We cannot add to the terms of the
provision what Congress left out**."  *CBS Inc. v. Primetime 24 Joint
Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001) (quotations and
alterations omitted).

*Silva-Hernandez v. U.S. Bureau of Citizenship and Immigration Servs.*, 701 F.3d

356, 361 (11th Cir. 2012) (internal quotations and citations in original) (bracketed

text added) (emphasis added).

Although the FDCPA speaks to a preclusion against communicating with a

consumer at an "unusual time or place[,]" **it is devoid of any such prohibition**

**regarding the medium of communication**.  15 U.S.C. § 1692c(a)(1).  The case of

*White v. LVNV Funding, LLC*, No. 2:24-cv-00140-CDS-BNW, 2024 WL 365404

(D. Nev. Jan. 30, 2024), is instructive.  There, the plaintiff-consumer similarly

contended that the defendant-collector violated the FDCPA by sending "her a letter

by certified mail" after she had sent a letter to the collector "explain[ing] that the

only convenient way to contact her was via email."  2024 WL 365404, at *2.  The

Nevada district court, however, rejected the plaintiff's contention because the

FDCPA "does not require that the debt collector comply with [the p]laintiff's

preferences[; i]nstead, it simply prohibits communications at unusual times or places

which should be known to be inconvenient to the consumer."  *Id.*  Here—just as in

*White*—because Arrington has not sufficiently alleged "any facts supporting the conclusion that her receipt of [Midland's] letter constituted a communication 'at [an] unusual time or place . . . which should be known to be inconvenient to [Arrington,]'" her complaint fails to state a claim under the FDCPA. *Id.* (internal quotation supplied by court). Arrington's complaint likewise essentially asks this Court to do what it cannot do—*i.e.*, "alter [the] statutory language . . . and add to the terms of the provision what Congress left out." *CBS Inc.*, 245 F.3d at 1228. Thus, her complaint should be dismissed based on the clear language of the FDCPA.[12]

**B.    The "animating purpose" of Midland's letter was not to induce a payment on the underlying debt.**

Even if the FDCPA allowed Arrington to specify the permissible medium of communications—which it does not—Midland still would be entitled to judgment on the pleadings because it did not mail its subject letter to Arrington "in connection with the collection of any debt[.]" *Id.* Therefore, Midland's letter does not fall within the FDCPA's scope. *See, e.g.*, *Dyer*, 108 F.Supp. 3d at 1280 ("[T]he communication by the debt collector that forms the basis of the suit must have been

---

[12] Perhaps due to the lack of any dispositive statutory language speaking to the medium of a collector's communication, Arrington's complaint further posits that Midland's response letter violates the FDCPA by virtue of the CFPB's "Regulation F," which does reference a collector's medium of communication. *See* 12 C.F.R. § 1006.14(h)(1) (purporting that "a debt collector must not communicate or attempt to communicate with a person through a medium of communication if the person has requested that the debt collector not use that medium to communicate with the person"); *compare* Doc. 1 at p. 12, ¶ 23. As explained further below, though, Arrington's attempted reliance on "Regulation F" is equally unavailing. *See infra*.

made 'in connection with the collection of any debt.'") (quoting 15 U.S.C. § 1692c(a)).

Although the FDCPA does not contain a definition for "in connection with the collection of any debt," courts have held that not every piece of correspondence that a collector sends to a consumer qualifies as an attempt to collect a debt. *See, e.g.*, *Williams v. Select Portfolio Servicing, Inc.*, No. 1:15-cv-03791-RWS-RGV, 2016 WL 9450471, at *19 (N.D. Ga. Aug. 11, 2016) ("Because these letters do not demand payment or establish a deadline, the Court finds that they do not constitute debt collection activity under the FDCPA.") (citations omitted).[13]   In fact, the FDCPA only applies to communications "made with an animating purpose of … induc[ing] payment by the debtor."   *McWhorter*, 2017 WL 3315375, at *6 (quotations omitted) (ellipses and bracketed text supplied by court); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (noting that communications can have dual purposes).

Moreover, in determining whether a given communication is made "in connection with the collection of any debt," courts should "look to the language of the correspondence in question—**specifically to statements that demand payment and discuss additional fees if payment is not tendered**." *Farquharson v. Citibank,*

---

[13] *See also, e.g.*, *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 4:10-cv-00754-BRW, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011) ("[C]ommunications that do not seek to collect debts cannot be considered as debt collection activities.").

*N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016) (affirming dismissal of plaintiffs' FDCPA claim) (emphasis added).  Indeed, "letters sent for informational purposes, such as those sent in response to correspondence . . . from a debtor are communications induced by the debtor and not the debt collector[;]" as such, "they **do not fall within the ambit of the FDCPA**."  *McElveen v. Wesport Recovery Corp.*, 310 F.Supp. 3d 1374, 1380 (S.D. Fla. 2018) (internal quotation mark omitted) (emphasis added).

Here, Midland's letter was "sent in response to correspondence . . . from [Arrington.]"  *Dyer*, 108 F.Supp. 3d at 1283; *cf.* Ex. 2 (Midland's response letter) at p. 1 ("We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account.").  **Midland's letter does not demand payment from Arrington**, and it further contains no discussion regarding "terms of payment or deadlines."  *Heagerty v. AMIP Mgmt., LLC*, No. 1:20-cv-02727-SCJ-RGV, 2021 WL 2587720, at *10 (N.D. Ga. Apr. 20, 2021) (granting defendant's motion to dismiss plaintiff's FDCPA claim); *see also, e.g.*, *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015) (holding that "the 'animating purpose' of the [defendant servicer's] letter was . . . not to induce [plaintiff] to resume payments on her defaulted mortgage") (affirming judgment in favor of defendant on plaintiff's FDCPA claim); *cf.* Ex. 2.

Midland's letter likewise does not threaten Arrington with litigation or the imposition of attorneys' fees and otherwise contains no indication "that any punitive actions would be taken if [Arrington] failed to make payments" to Midland. *Farquharson*, 664 F. App'x at 801 (granting defendants' motions to dismiss plaintiffs' FDCPA claim); *see also Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998) (holding that defendant's letter at issue was not made "in connection with the collection of any debt" **because the letter "demands nothing, and doesn't even imply that anything owed under the [plaintiffs'] forbearance agreement is overdue"**) (emphasis added); *cf.* Ex. 2.

Additionally, the very text of Midland's letter plainly demonstrates that it was "sent to provide [Arrington] with information"—in fact, the word "information" appears no less than seven times on the first page of the letter:

Dear Youlanda,

We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account. After reviewing the information you provided, our account notes, and information provided by the previous creditor, with an address of 1680 CAPITAL ONE DRIVE MCLEAN, VA 22102, we have concluded that our information is accurate. We have also enclosed documents regarding the account. If you believe we have reached this conclusion in error, please reference the information below:

**We have received the following information from you:** We are uncertain of what you are specifically disputing

**Next steps:** In order for us to further investigate your inquiry please provide the following: Written explanation and documentation demonstrating any errors in your account information

**Some additional information about your account:** Date opened: 6/15/2013. Date of charge off: 7/31/2019. Current servicer: Midland Credit Management, Inc.. Date purchased: 8/20/2019. Original purchase balance: $904.14. Accrued interest: $0.00. Accrued fees: $0.00. **Total payments/Adjustment applied: $0.00. Date paid in full (if applicable): .**

Ex. 2 at p. 1; *cf., e.g., Dyer*, 108 F.Supp. 3d at 1282 ("Defendant's intent in sending the letters[] does not appear to be to collect the debt or induce Plaintiff to settle the debt.  Rather, **the letters were sent to provide Plaintiff with information**.") (granting defendant's motion to dismiss plaintiff's FDCPA complaint) (emphasis

11

added).  Moreover, Midland made clear that it understood and respected Arrington's

request to only receive correspondence through email and text going forward:

For additional information you may contact us online at MidlandCredit.com, you may also call Consumer Resolutions at 877-366-1520.
In the meantime, as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless
required by law or you request that we resume communications.
Please call Consumer Support Services at 877-382-6063 if you have any additional questions.
Se habla espanol: 877-898-3955
Sincerely,

*Angelique Ross*

Consumer Support Services

Ex. 2 at p. 1; *cf., e.g.*, *Mathieson v. Wells Fargo Bank, NA; et al.*, 524 F.Supp. 3d

1246, 1255 (M.D. Fla. 2021) (granting defendants' motion to dismiss plaintiffs'

FDCPA claim).

Also, while Midland expects Arrington to contend that Midland's response

letter should be deemed a collection-related communication because it provides an

address where Arrington could send payments,[14] that argument lacks merit.  That

simple disclosure of an address where payments could be sent does not transform

the letter into a communication made in connection with the collection of a debt.

*See, e.g.*, *Muller v. Midland Funding, LLC*, No. 14-cv-81117-KAM, 2015 WL

2412361, at *5 (S.D. Fla. May 20, 2015) (noting that "the disclosure of these

addresses [to where payments should be sent] does not indicate that the

[Defendant's] Letter's overall purpose was to induce an immediate payment rather

than to inform Plaintiff where payments should eventually be sent") (granting in part

---

[14] *See* Ex. 2 at p. 2.

12

defendant's motion to dismiss).[15]    Similarly, Midland's letter's boilerplate disclosures that it was "a communication from a debt collector" and "an attempt to collect a debt"[16] is "not sufficient to show that [Midland] was engaged in collection activity" under the FDCPA.  *Heagerty*, 2021 WL 2587720 at *9 (granting defendants' motion to dismiss plaintiff's FDCPA claim) (citations omitted).[17]

Midland's "letter [to Arrington] is not related to debt collection, which is necessary to bring it under the purview of the FDCPA." *Farquharson*, 664 F. App'x at 800-01.  Simply put, because Arrington has "failed to plead 'that the challenged conduct is related to debt collection[,]'" Midland is entitled to judgment on the pleadings.  *Id.* at 799 (quoting *Reese*, 678 F.3d at 1216).

---

[15] *See also, e.g.*, *Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550, 2008 WL 723507, at **4-5 (E.D. Mich. Mar. 17, 2008) (finding that a letter notifying a customer that her outstanding balance had been transferred to her new account for her "convenience in making payment" did not contain language that she was "required to pay the debt" and thus was not a communication in connection with the collection of any debt).

[16] Ex. 2 at p. 2.

[17] *See also, e.g.*, *Goodson*, 600 F. App'x at 432 (holding that disclaimer identifying communication as an "attempt to collect a debt" does not automatically trigger FDCPA protections); *Martinez v. McCalla Raymer, LLC*, No. 1:11-cv-1513-TCB-ECS, 2011 WL 13319302, at *2 (N.D. Ga. Sept. 29, 2011), *adopted by* 2011 WL 13319301 (N.D. Ga. Oct. 31, 2011) (determining the plain language of defendant's communication with plaintiff "support[ed] the finding that [d]efendant was not engaging in 'debt collection' under the FDCPA" even though defendant's letter to plaintiff contained language stating that it was "an attempt to collect a debt").

**II.    This motion is due to be granted because "Regulation F" does not provide for a private cause of action.**

Arrington's complaint intimates that Midland violated the CFPB's "Regulation F" by mailing its subject letter to Arrington on October 5, 2023.[18]  More specifically, "Regulation F" posits that "a debt collector must not communicate or attempt to communicate with a person through a medium of communication if the person has requested that the debt collector not use that medium to communicate with the person."   12 C.F.R. § 1006.14(h)(1).   In turn, Arrington apparently is alleging that Midland violated this subsection of "Regulation F" when it mailed its October 2023 letter less than two weeks after supposedly receiving her prior letter stating "that only communication by text or email was convenient[.]"[19]

However, Arrington's asserted reliance on "Regulation F" is futile, because an alleged violation of this regulation **does not give rise to a private right of action**:

> With respect to Plaintiff's assertion of a violation of "12 CFR Part 1006 (Regulation F), et al., Fair Debt Collection Practices," this assertion fails to state a viable cause of action.  Regulation F is a narrow regulatory provision that sets out the procedures that states use to apply to the Bureau of Consumer Financial Protection ("the Bureau") for exemptions from the FDCPA of certain classes of debt collection practices.  The regulation is simply not applicable to the facts alleged by Plaintiff, **nor does it provide for a private cause of action**.

---

[18] *See, e.g.*, Doc. 1 at p. 12, ¶ 23.

[19] Doc. 1 at p. 10, ¶ 16.

*Doss*, 2020 WL 9935823, at *4 (emphases added). In sum, "federal regulations cannot themselves create a cause of action; that is a function of the legislature." *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993). Here, and as made abundantly clear by the court in *Doss*, the FDCPA does not provide for a private right of action akin to subsection 1006.14(h)(1) of "Regulation F." *See Doss*, 2020 WL 9935823, at *4; *cf. White*, 2024 WL 365404, at *2 (recognizing that **the FDCPA "does not require that the debt collector comply with [the p]laintiff's preferences" in regard to the mediums of communication**) (emphasis added). As such, to any extent premised on "Regulation F," Arrington's FDCPA claim against Midland is subject to dismissal as a matter of law.

### Requested Relief

For the foregoing reasons, and pursuant to Federal Rule of Civil Procedure 12(c), Defendant Midland Credit Management, Inc. respectfully requests that this Court enter judgment on the pleadings in its favor.

Date: March 1, 2024

/s/ Thomas R. DeBray, Jr.
One of the Attorneys for Defendant,
Midland Credit Management, Inc.

**OF COUNSEL:**

Jason B. Tompkins
Thomas R. DeBray, Jr.
Balch & Bingham LLP
1901 6th Avenue North, Suite 1500
Birmingham, Alabama 35203

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing and attached with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record on this the 1st day of March, 2024:

John G. Watts
M. Stan Herring
Patricia S. Lockhart
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

/s/ Thomas R. DeBray, Jr.
Of Counsel