FILED
2024 Apr-05  PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

Youlanda Arrington,                    Case No.: 2:23-cv-01744-AMM

    **Plaintiff,**

**vs.**

Midland Credit Management, Inc., *et al.*,

    **Defendants.**

_____/

## PLAINTIFF, YOULANDA ARRINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now Plaintiff, Youlanda Arrington ("Ms. Arrington" or "Arrington") and respectfully requests this Honorable Court deny Defendant Midland Credit Management, Inc.'s ("Midland") motion for judgment on the pleadings (Doc. 4) and states as follows:

### I. INTRODUCTION

Arrington, as was her right, told Midland, a debt collector, not to send her mail or validation documents.  Instead of honoring this, Midland intentionally sent a collection letter by mail to Arrington enclosing validation documents.

Midland, knowing Arrington did not want any validation documents, not only sent those to Plaintiff but wrote that Arrington requested the documents when Midland knew Arrington specifically said <u>not</u> to send the documents.

Midland has responded to this lawsuit by saying it can communicate with Arrington however it wants and by ignoring the lie it stated in writing about Arrington wanting documentation/validation of the debt. Midland is wrong and its motion is due to be denied.

## II.   FACTS AND BACKGROUND

1.    This action arises out of Defendant Midland's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and 12 C.F.R. § 1006.1, *et seq.* ("Regulation F"), against Youlanda Arrington, a resident of Alabama, in its unlawful efforts to collect a disputed consumer debt. (Doc 2, ¶2).

3.    Midland is a debt collector under the FDCPA. (Doc 1 p. 8, ¶3, 11).

4.    Arrington allegedly incurred a financial obligation that was primarily for personal, family, or household purposes, and is considered a "debt" as defined by 15 U.S.C. § 1692a(5). (Doc. 1 p.10, ¶9). Midland engaged in debt collection activities against Ms. Arrington after receiving the account from another company. The amount of the disputed debt is $904.14. (Doc. 1 p. 10, 12-15; Doc. 4-2).

5.    On September 18, 2023, Arrington sent a letter by certified mail to Midland which was delivered on September 22, 2023. (Doc. 1 p. 10, ¶15; Doc 4-1). In this letter, Arrington disputed the debt Midland claimed she owed. (Doc 4-1). Pursuant to her rights under the FDCPA and Regulation F, Arrington also put Midland on notice that only communication by text or email was convenient for her

and that all other forms of communication, such as physical mailings, should not be utilized. (Doc. 1 p. 10, ¶16; Doc. 4-1).  To this end, Arrington also gave Midland her cell phone number for texting purposes and provided her email address. (Doc. 1 p. 10, ¶16; Doc. 4-1).

6.      Furthermore, Arrington explicitly stated that she was not requesting any information from Midland and wrote, "This is not a request for validation or verification.  I am not interested in you sending me any documentation.  I'm trying to be clear—do not send me any documentation through the mail as receiving mail from you is inconvenient to me." (Doc. 1 p. 11, ¶19; Doc. 4-1).

7.      Despite Arrington's clear requests Midland _NOT_ send her any information and explicit instruction that _NO_ communication should occur through physical mail, on October 5, 2023, Midland sent her a letter by physical mail in furtherance of its debt collection activities. (Doc. 1 p. 11, ¶17-19; Doc. 4-2).

8.      Midland's letter falsely stated, "We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account." (Doc. 1 p. 11, ¶18; Doc 4-2, p. 2-3).

9.      Moreover, Midland's letter states in bold, "**Please understand this is a communication from a debt collector.  This is an attempt to collect a debt. Any information obtained will be used for that purpose.**" (Doc 4-2, p.3).  The letter also contained account statements from the original creditor.  Doc 6.

10.     Through these actions, Arrington alleges Midland has violated multiple sections of the FDCPA, including 1692c, 1692c(a), 1692c(a)(1), 1692d, 1692e, 1692e(10), 1692f, 1692f(1), and Regulation F. (Doc. 1 p. 12, ¶ 23).

11.     Midland now moves for judgment on the pleadings, claiming that Arrington has failed to state a claim for relief under the FDCPA. (Doc 4).

12.     At this juncture, however, the facts as alleged must be construed in favor of the nonmoving party, and the Court must only consider whether Arrington has plausibly stated a claim for which relief can be granted.

## III.    <u>MEMORANDUM OF LAW</u>

Congress passed the FDCPA, among other reasons, "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).  The FDCPA is a strict liability statute, and a single violation of any provision is sufficient to trigger liability. 15 U.S.C. § 1692k(a); *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185,1190 (11th Cir. 2010); *Towles v. E. Account Sys. of Conn., Inc.*, Case No. 3:22-CV-204-RAH, 2023 WL 172023 at *3 (M.D. Ala. Jan. 12, 2023); *Ferguson v. Credit Mgmt. Control, Inc.*, 140 F.Supp.2d 1293 (M.D. Fla. 2001).  Additionally, the FDCPA is a remedial statute, and its provisions are to be <u>liberally construed in favor of consumer debtors</u>." *Bandy v. Midland Funding, LLC*, No. 12-00491-KD-C, 2013 WL 210730, at *5 (S.D. Ala., Jan. 18, 2013) (citing *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002).

Midland makes three arguments, all of which fail to carry its high burden of dismissing the case. The only argument that applies to all of Arrington's claims is that Midland did not attempt to collect a debt.

The second argument is that the FDCPA does not control the method of communication and this argument only applies to Arrington's 1692c(a)(1) claim.

Finally, the Midland argues Regulation F does not provide for a private cause of action and should be ignored by this Honorable Court.

### A.    Midland's Collection Letter to Arrington is Debt Collection Activity.

There is no dispute that Arrington has sufficiently pleaded (and this is not contested in the motion) that she is a consumer, the alleged debt is covered, and that Midland is a debt collector under the FDCPA. Midland devotes the lion share of its motion to whether the communication at issue to Arrington was made "in connection with the collection of any debt." (Doc. 4, p.8-13). Arrington has set forth sufficient details to state a facially plausible claim demonstrating that Midland's contact was made indeed pursuant to a debt collection activity.

In determining whether debt collector's communication is sent "in connection with the debt," courts look at the language of the actual letters in question, including any statements discussing or demanding payment or additional fees that could accrue if not tendered, and any disclosures made that the sender is attempting to collect a

debt and was acting as a debt collector. *See Pinson v. Albertelli Law Partners*, LLC, 618 F. App'x 551, 553 (11th Cir. 2015) (citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2013); and *McElveen v. Westport Recovery Corp*., 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018).

Just this week in *Loyd v. Midland Credit Mgmt., Inc*., Case No. 1:23-cv-05727-TWT-JEM (N.D. GA, Atlanta Div. April 1, 2024), Midland's same argument regarding its exact form letter response was rejected by the U.S. Magistrate Judge's Non-Final Report & Recommendation. (Exhibit "A" at *8-12.)  This R&R recommended Defendant's motion to dismiss be denied finding that "communications must be viewed in their entirety" and that Defendant's "implicit demand" for payment by stating the amount of debt, describing how the debt could be paid, providing a phone number and address to send payment, and expressly stating that the letter was made for the purpose of collecting a debt all factored into finding that Plaintiff alleged a plausible FDCPA claim.  The Eleventh Circuit's multi-factorial approach also considers whether the statements were part of a "strategy to make payment more likely." *See Bohringer v. Bayview Loan Serv., LLC*, 141 F. Supp.3d 1229, 1240-41 (S.D. Fla. 2015); *McElveen v. Wesport Recovery Corp*., 310 F.Supp.3d 1374, 1380 (S.D. Fla. 2018).

Although Midland now argues that the "animating purpose" of its letter was simply to "provide information" and claims it was not an activity associated with

debt collection, its letter did more than merely provide information.  Midland states in bold that the letter "**is a communication from a debt collector,**" was sent in "**an attempt to collect a debt**" and that "**[a]ny information obtained will be used for that purpose.**" (Doc 4-2, p.2 (emphasis in the original)).  The letter also provided a Current Balance of $904.14,  identified Midland Credit Management as the current owner and servicer and included monthly statements for the alleged debt purporting to be from the original creditor. (Doc. 4-2, p.1; Doc. 6-1). Midland's letter then directs the consumer to engage in the "next steps" of providing documentation demonstrating any perceived errors, and then seeks payment by directing Arrington where to "send payments to" (Doc. 4-2).

Indeed, Midland's argument that its letter was merely an informational favor to Arrington and not connected to any debt collection activity defies logic. Midland's correspondence was in direct connection with its debt collection activities which were initiated prior to Arrington's letter.  Midland's letter was not sent in response to any request for information from the alleged debtor.  Instead, Arrington's correspondence in the instant case plainly instructed Midland to not send her any information.  This not only undercuts this first argument that it was not an attempt to collect a debt but also bolsters Arrington's other claims especially under Section 1692e that Midland lied in connection with its debt collection activities.

Contrary to Midland's implication, merely writing the word "information" on

its letter does not somehow provide immunity for Defendant.  Communications can have "dual purposes" and still be found to be a violation of the FDCPA. *See Daniels v. Select Portfolio Serv., Inc.*, 34 F.4th 1260, 1267-68 (11th Cir. 2022) (reversing dismissal and recognizing "some portions of the statements could have been for informational purposes" but "a communication can have dual purposes" and "does not doom" Plaintiff's complaint); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (reversing dismissal and holding complaint sufficiently alleged correspondence was made "in connection with the collection of a debt" though it included some statements that were potentially informational in nature); *See also Caceres v. McCalla Raymer, LLC,* 755 F.3d 1299, 1303 (11th Cir. 2014)(holding a letter was in connection with and an attempt to collect a debt recognizing "that [even though] the letter did not contain an express demand for payment [ ] taken as a whole it "was an implicit demand for payment.")

Moreover, Midland relies on cases that are distinguishable from the instant case.  For example, Midland cites *McWhorter v. Ocwen Loan Serv., LLC*, No. 2:15-cv-01831-MHH, 2017 WL 3315375, at *6 (N.D. Ala. Aug. 3, 2017) for the proposition that the FDCPA only applies to communications "made with an animating purpose of… inducing payment by the debtor." (Doc. 4 p. 9)  *McWhorter* denied the motion to dismiss Ocwen rejecting Ocwen's claim it was not a debt collector and that its communications were not efforts to collect debt finding,

> Ocwen's 'Special Notice' appears to have been made with an animating purpose to induce payment by Mr. Fielder. The notice states the past due amount that Mr. Fielder owed on his mortgage, describes how Mr. Fielder may pay that amount, and provides multiple addresses to which Mr. Fielder may send payment.

*Id* at 15. The court further noted,

> "it is . . . difficult to conceive of any credible reason for [Ocwen] to send the [notice] other than to pressure [Mr. Fielder] into making payments on the mortgage debt for which h[is] personal liability had already been discharged." *Roth*, 2016 WL 3570991 at *3. Also, as in *Roth*, Ocwen's disclaimer that the notice was not an attempt to collect debt "'is insufficient to shield [Ocwen] as a matter of law from liability at this stage of the litigation.'"

 *Id* at 16-17.

Midland also mistakenly relies on *Dyer v. Select Portfolio Servicing, Inc*. The actual holding in the *pro se* case of *Dyer*, however, was that "letters sent in response to correspondence or an inquiry from a debtor are communications induced by the debtor and not the debt collector," and thus, "do not fall within the ambit of the FDCPA." *Dyer v. Select Portfolio Serv., Inc.*, 108 F. Supp. 3d 1278, 1283 (M.D. Fla. 2015) (citation omitted). Here, there was no inquiry from Arrington whatsoever and she specifically said <u>not</u> to send any information. Thus, Arrington was not eliciting any such response from the creditor.

Additionally, unlike the present case, *Dyer* noted, "[e]ach of the letters states, 'This information is intended for informational purposes only and is not considered an attempt to collect a debt.'" *Dyer*  at 1282.  Here,  Midland directly and

intentionally said the letter <u>was an attempt to collect a debt</u> and never said it was for

"informational purposes only."  This is similar to Judge Haikala's case from 2022

where the collector made a similar argument that was rejected:

> Capital Link's argument **conflicts with the plain language of the text message, which states, in pertinent part: "This communication is from a debt collector, this is an attempt to collect a debt."** (Doc. 27-3, p. 13). Moreover, the text message noted Ms. Carter's Vivint debt. (Doc. 27-3, p. 13). While Capital Link is legally obligated to inform Ms. Carter that it is a debt collector and that it is attempting to collect a debt, **those words – no matter why they were included in the message – convert Capital Link's communication into an attempt to collect a debt**.

*Carter v. Capital Link Mgmt.*, 614 F. Supp. 3d 1038, 1046 (N.D. Ala.

2022)(Emphasis added).

Midland also cites to a number of cases including *Farquharson v. Citibank*,

*N.A.*, 664 Fed. App'x 793, 796 (11th Cir. 2016), in which the letters sent concerned

loan modification programs to a *pro se* plaintiff who did not adequately allege the

defendants were debt collectors.  These cases are also distinguishable from the

instant case, as the correspondence here does not involve any type of loan

modification or similar opt-in program.

In short, Arrington and Midland were not pen pals simply sharing information

with each other.  Deploying common sense and taking all factual inferences in favor

of Arrington, the <u>only basis</u> Midland had to communicate with Arrington was in

furtherance of its debt collection activity.  Arrington has sufficiently pleaded that the

challenged conduct was related to debt collection activity, and Midland's motion should be denied. Given that this argument fails, Arrington points out this is the <u>only</u> argument that applies to all of Arrington's claims. The other two arguments do not address the Section 1692d, 1692e and 1692f claims.

**B.      Arrington has Stated a Plausible Violation of Section 1692c.**

Section 1692c limits debt collectors' communications with consumers for the purpose of collecting debt. Pursuant to Section 1692c(a)(1), debt collectors are prohibited from communicating with a consumer "at any unusual time or place or a time or **place known or which should have been known to be inconvenient to the consumer**." 15 U.S.C. § 1692c(a)(1) (Emphasis added).

Here, Midland had <u>actual</u> knowledge that communication at her home (place) was inconvenient but still contacted her at home by mail. (Doc 4-2). Thus, by the plain terms of the statute, Midland violated this provision.

Midland may attempt to argue that the statute does not define "place." However, the Consumer Financial Protection Bureau ("CFPB"), charged by Congress to implement regulations under the FDCPA, has explained in Regulation F, which became effective November 2021—well before the subject correspondence—that <u>mail is tied to a place</u> and a consumer can stop mail coming to his house, while not stopping other forms of communication. *See infra*. Email

and text, however, are not tied to a place like the mail is.  Here is how the CFPB
describes this:

> 1. *Communications or attempts to communicate at unusual or
> inconvenient places.* Section 1006.6(b)(1)(ii) prohibits a debt collector
> from communicating or attempting to communicate with a consumer in
> connection with the collection of any debt at any unusual place, or at a
> place that the debt collector knows or should know is inconvenient to
> the consumer.  **Some communication media, such as mailing
> addresses** and landline telephone numbers, **are associated with a
> place**.  Pursuant to § 1006.6(b)(1)(ii), a debt collector **must not
> communicate or attempt to communicate with a consumer through
> media associated with an unusual place, or with a place that the
> debt collector knows or should know is inconvenient to the
> consumer.**  Other communication media, such as email addresses and
> mobile telephone numbers, are not associated with a place.

12 C.F.R. § 1006 app Supplement I to Part 10064 (emphasis added).

Thus, Arrington gave Midland specific and clear instructions not to send mail
to her home and Midland intentionally disregarded that information and in doing so,
violated her rights.  As such, Arrington has stated a plausible claim for which relief
could be granted and Midland's motion should be denied.

### C.    Arrington has Stated a Plausible Violation of Section 1692d.

Similarly, Arrington has sufficiently pleaded a violation of Section 1692d.
This Section prohibits debt collectors from taking actions that have the natural
consequences of harassing, oppressing, or abusing consumers when attempting to
collect debt. 15 U.S.C. § 1692d.  Regulation F provides additional examples of and
guidance on prohibited conduct under § 1692d in paragraphs (b) through (h). 12

C.F.R. § 1006.14.  Paragraph (h) specifically defines this harassment, oppression, and abuse as including:

> "(h)*Prohibited communication media* -(1)*In general.* In connection with the collection of any debt, a debt collector **must <u>not</u> communicate or attempt to communicate with a person through a medium[1] of communication if the person has <u>requested that the debt collector not use that medium</u> to communicate with the person**."

12 C.F.R. § 1006.14(h) (emphasis added).

Despite Arrington's explicit and clear instructions that Midland not communicate with her through the medium of physical mail, Midland ignored her request and communicated with her through the mail anyway.  As explained by the CFPB, this type of action constitutes a violation of Section 1692d because the "natural consequence of which is to harass, oppress, or abuse" Plaintiff.  Arrington has alleged this in paragraph 20 of the Complaint, where she states that not only was harassment the natural consequence of Midland's actions but that "Defendant's actions were designed to confuse, harass, and deceive Plaintiff." (Doc 1, p.5).  Thus, Midland's motion should be denied on this basis, as well.

---

1 12 C.F.R. § 1006 app Supplement I to Part 1006 ("1. *Any medium.* Section 1006.2(d) provides, in relevant part, that a communication can occur through any medium. "Any medium" includes any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, **mail**, email, text message, social media, or other electronic media.")(Emphasis added)

**D.    Arrington has Stated a Plausible Violation of Section 1692e.**

Section 1692e provides a non-exhaustive list of conduct considered to be false, deceptive, or misleading.  Midland has not argued against this claim other than its misplaced argument that the letter was not an attempt to collect a debt.

The Eleventh Circuit generally applies the "least sophisticated consumer" standard to determine whether the debt collector's conduct violates this section. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985).  Section 1692e(10) gives as an example of the general rule, "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

Here, Midland engaged in "false, deceptive, and misleading representation or means" to collect the subject debt by misrepresenting in the letter *why* it was sending a letter to Arrington and by including verification documentation.  As discussed, Arrington's instructions left no ambiguity.  Midland attempts to minimize this by asserting that "sending the itemized statement without request is not a deceptive act...," but Midland misses the point.  The sending of the information, while still violating other provisions (1692c and 1692d), was not itself "deceptive."

But to *misrepresent* the situation and *falsely* claim that the Arrington *requested* an itemized statement when Arrington said "NOT" to send it is a very different matter.  It is objectively misleading and, significantly, it would have been misleading

14

to the least sophisticated consumer.  The same would be true if a consumer told a debt collector to never call again, and the collector called the consumer back and said, "We received your message that you *wanted* us to call you so that's what we are doing. How would you like to pay this debt?"  As this is a strict-liability statute that is to be interpreted in a broad manner, Arrington has alleged sufficient facts to establish a plausible claim for relief that Midland engaged in false and deceptive representations in connection with the collection of an alleged debt.

**E.    Arrington has Stated a Plausible Violation of Section 1692f.**

Section 1692f is "intended to cover actionable debt collection practices that may not be expressly addressed in" the other sections of the FDCPA. *See McClanahan v. Medicredit, Inc.*, No. 3:19-cv-00163, 2020 WL 6204419 at *15-16 (M.D. Tenn. Oct. 22, 2020).  While Arrington feels her 1692c-e claims are due to move forward, the 1692f is offered alternatively as Midland's conduct in communicating by mail when told not to and misrepresenting the reason for the letter is at least plausibly unfair.

**F.    Arrington is Bringing a Private Right of Action Under the FDCPA Which Regulation F Clarifies With Respect To Communications.**

Lastly, Midland argues that there is no private right of action under Regulation F. However, Arrington's causes of action here are founded upon violations under FDCPA sections 1692c, 1692d, 1692e and 1692f, as discussed *supra*.  Significantly,

the FDCPA expressly provides for a private cause of action within the Act itself. *See* 15 U.S.C. § 1692k.  As stated therein, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of..." *Id*.

Thus, Arrington need not rely upon Regulation F to create a private cause of action.  A private right of action for violating the FDCPA existed <u>before</u> Regulation F and <u>still exists</u>. Regulation F does not seek to change the right already embodied within the FDCPA, but it provides clarity to both debtors and collectors as to implementation of the Act, especially as to newer methods of communication and the choice consumers have over the method of communication.

The FDCPA itself specifically authorizes agency power to prescribe such regulations, as follows:

> **(c) Rules and regulations**
> Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 [ 12 U.S.C. 5519(a) ], the <u>Bureau may prescribe rules with respect to the collection of debts by debt collectors</u>, as defined in this subchapter.

15 U.S.C. § 1692l(d) (bolding in original, underlined added).  Moreover, Reg. F was enacted to carry "out the purposes of the FDCPA, which include eliminating abusive debt collection practices by debt collectors, ensuring that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and promoting consistent State action to protect consumers against debt collection

abuses..." 12 C.F.R. § 1006.1.

Congress, through the Dodd-Frank Act, created the CFPB, giving it the responsibility to create rules, but no change was made in terms of the right of a consumer to bring a private cause of action under the FDCPA.  Thus, Midland's claims regarding this issue are misplaced.

Midland's reliance on *Doss v. Citizens* (a *pro se* case) is in error, as it simply stated in *dicta* that Regulation F does not allow for a private right of action, but the case was actually decided on whether the violating party was a debt collector[2] within the meaning of the FDCPA—an issue which has no bearing here. *See Doss v. Citizens Sav. & Tr. Co.*, 2020 WL 9935823, at *4 (M.D. Tenn. Jan. 3, 2020).  And it would be <u>remarkable</u> for a court to decide in January 2020 details about a regulation not going into effect until 22 months later, in November 2021.

Additionally, *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993) has no applicability herein.   *Dearborn* addressed whether the federal regulations promulgated under the FCUA created a private cause of action. *See id*. However, as there exists no express or implied cause of action under the FCUA, the regulations standing alone could not create one. *See id.*  In the instant case the Court is not faced with that issue, as the FDCPA expressly creates a private cause of action.

---

2 Doss sued Citizens Savings & Trust for violations of the FDCPA. The court found the claim to be without merit because "Defendant, as the creditor for the loan at issue, is not a debt collector that falls under the scope of the FDCPA." Doss, 2020 WL at *4.

Likewise, Midland's reliance on the Nevada slip copy case of *White* is misplaced. *See White v. LVNV Funding, LLC*, No. 2:24-cv-00140-CDS-BNW, slip op., 2024 WL 365404, at *2 (D. Nev. Jan. 30, 2024).   In granting the motion to dismiss without prejudice and with leave for the *pro se* Plaintiff to amend her FDCPA claim, the Magistrate Judge did not discuss Regulation F or the "place" aspect of Section 1692c.   Instead, the Judge reviewed the Complaint as it was brought *in forma pauperis* without any briefing by any party. *Id*.   Moreover, although the opinion itself does not discuss in depth the *pro se* Plaintiff's original letter to the debt collector, her letter was attached to the complaint. (Exhibit "B").   Unlike the instant case, the *White* consumer specifically asked the debt collection company for validation of the debt, which prompted the debt collector to respond via mail with the requested documents. *Id*.   This fact alone distinguishes[3] *White* from instant case where no validation was requested. *Id*.

Finally, Midland's argument that Arrington is attempting to somehow "alter statutory language" is without merit.   Reg F was enacted in large part at the behest of the collection industry to balance the needs of both consumers and the debt collection industry.   For example, during the hearing before the House Committee

---

[3] Arrington takes no position on whether the *White* defendant sending validation documents through a medium (such as a letter) violates the FDCPA in and of itself as Arrington's letter specifically stated, "This is not a request for validation or verification.  I am not interested in you sending me any documentation.  I'm trying to be clear -- do not send me any documentation through the mail as receiving mail from you is inconvenient to me."  Doc 4-1.

of Financial Services, held on September 26, 2019, the Committee heard from several representatives of the debt collection industry, including John H. Bedard, Jr., who is a recognized defense lawyer and was formerly on the Board of Directors for ACA International.[4]  As he explained before the committee:

> The conveniences of modern technology can no longer be ignored.  The **Bureau's proposal appropriately acknowledges the need to bridge the** communication gap between consumers and debt collectors.  There can be little dispute that clear, fair regulation of the collection industry helps consumers and industry. **The Bureau's proposal gives unconditional control to consumers over the communication methods used by debt collectors.**  This control gives consumers unprecedented power over the debt collection process while at the same time building a stronger technology bridge between consumers and debt collectors.

*Examining Legislation to Protect Consumers and Small Business Owners From Abusive Debt Collection Practices, Hearing Before the H. Comm. On Financial Services,* 116th Cong. Serial No. 116-54 (2019) (Statement of John H. Bedard, Jr., Owner, Bedard Law Group, P.C.) (emphasis added), accessed April 5, 2024, at https://www.govinfo.gov/content/pkg/CHRG-116hhrg42354/html/CHRG-116hhrg42354.htm.

---

4 ACA International, The Association of Credit and Collection Professionals is the leading industry trade group representing debt collectors and advocating on their behalf with policy makers at state and federal levels. https://www.acainternational.org/about/leadgov/ Midland's parent company, Encore, has been an ACA member since 1991.
https://me.acainternational.org/Membership/Membership-Directory/Company-Member-Directory

## <u>CONCLUSION</u>

Arrington sufficiently pleaded a claim arising from Defendant Midland's violations under FDCPA and Regulation F.  For the reasons and authority cited herein, Defendant's Motion for Judgment on the Pleadings should be denied in its entirety.


Respectfully Submitted,

 */s/ M. Stan Herring*
John G. Watts
M. Stan Herring
Patricia S. Lockhart
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
John@wattsherring.com
Stan@wattsherring.com
Patricia@wattsherring.com

*Attorneys for Youlanda Arrington*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the **5th Day of April 2024**, I have served the following and attached via electronic e-mail and/or the CM/ECF electronic filing and service system on the following:

Jason B Tompkins
Thomas R. DeBray, Jr.
Balch and Bingham LLP
1901 6th Ave. north, Suite 1500
Birmingham, AL 35203
tdebray@balch.com
jtompkins@balch.com

*/s/ M. Stan Herring*
OF COUNSEL

# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHARRONDA LOYD,

     Plaintiff,

v.

MIDLAND CREDIT
MANAGEMENT, INC.,

     Defendant.

CIVIL ACTION FILE
NO. 1:23-CV-05727-TWT-JEM

UNITED STATES MAGISTRATE JUDGE'S
NON-FINAL REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. (Doc. 5.) For the following reasons, the Court **RECOMMENDS** that Defendant's motion, (Doc. 5), be **DENIED**.

I.   **INTRODUCTION**

Plaintiff, who is represented by counsel, initiated this action against Defendant on December 13, 2023. (Doc. 1.) Plaintiff asserts one claim for relief against Defendant based on its alleged violation of the 15 U.S.C. § 1692c(a)(1), a provision of the Fair Debt Collection Practices Act ("FDCPA"). (*Id.* at 4.) Plaintiff served Defendant on December 26, 2023. (Doc. 4.) In lieu of filing an answer, Defendant timely moved to dismiss Plaintiff's Complaint under Rule 12(b)(6) on January 16, 2024. (Doc. 5, "Def Brief.") Plaintiff timely responded in opposition on January 30, 2024, (Doc. 7, "Pl. Resp."), and Defendant timely replied on

February 13, 2024, (Doc. 8, "Def. Reply"). The motion to dismiss is now ripe for review.

## II.   DISCUSSION

### A.   Plaintiff's Allegations and Claims

On November 11, 2023, Plaintiff mailed a letter via USPS certified mail to Defendant in which she disputed a debt she purportedly owed to Victoria's Secret in the amount of $355.14 and a debt she purportedly owed to Capital One Bank (USA) N.A in the amount of $543.45 (the "dispute letter"). (Doc. 1 ¶ 7.) She asked Defendant to validate these debts under 15 U.S.C. § 1692g, and she stated that "the only convenient way to contact me is by email." (*Id.* ¶ 10; Doc. 5-3 at 2.) On November 20, 2023, Plaintiff received notice from USPS that Defendant had received her dispute letter. (Doc. 1 ¶ 9.) On November 22 and 27, 2023, Plaintiff received two letters from Defendant in response to her letter (the "response letters"). (*Id.* ¶ 11.) Plaintiff alleges that the response letters were attempts to collect the two disputed debts, and that Defendant violated § 1692c(a)(1) by sending the response letters to her by mail, which Defendant knew was "a place [that] was no longer convenient" to her. (*Id.* ¶¶ 11, 14.)[1]

---

[1] A court may look beyond the four corners of a complaint and consider documents "'referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.'" *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (quoting *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018)). Here, Defendant includes Plaintiff's dispute letter and their response letters as exhibits to its motion to dismiss, (*see* Docs. 5-1, 5-2, 5-3), and cites to them throughout its brief, (*see* Doc. 5). Plaintiff refers to these documents in her Complaint, (*see* Doc. 1 ¶¶ 7, 11), and in her response brief, (*see* Doc. 7); she does not dispute their authenticity, (*see* Doc. 7); and they are central to the merits of

**B.**    <u>Legal Standard</u>

Under Rule 12(b)(6), the Court is authorized to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The pleading standard required under Rule 8(a)(2) is liberal, requiring only notice pleading—a short and plain statement that gives the defendant fair notice of what the claim is, and the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); Fed. R. Civ. P. 8(a)(2). However, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Leonard v. F.B.I.*, 405 F. App'x 386, 387 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While this pleading standard does not require "detailed factual allegations," it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a pleading is so vague or ambiguous that the responding party cannot reasonably prepare a response, the Court is authorized under Rule 12(b)(6) to dismiss a complaint for failure to state a claim. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

---

her claim, *see Ingram-Singletary v. CitiMortgage, Inc.*, No. 1:14-CV-1680-ELR-LTW, 2016 U.S. Dist. LEXIS 146503, at *8 n.5 (N.D. Ga. Feb. 4, 2016) (considering defendants' response to plaintiff's debt validation request because it was central to her FDCPA claim and because plaintiff did not dispute its authenticity). Therefore, the undersigned will consider these documents without converting Defendant's motion to dismiss into a motion for summary judgment.

### C.     <u>Analysis</u>

Plaintiff brings one claim against Defendant under § 1692c(a)(1) of the FDCPA. (Doc. 1.) Under this provision, "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any . . . place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). Defendant contends that Plaintiff fails to state a claim for relief solely because the response letters were not sent "in connection with the collection of any debt." (Def. Brief at 6.) Plaintiff, of course, takes the opposite position. (Pl. Resp. at 6-7.) Both parties point to the response letters for support. (Def. Brief at 7-9; Pl. Resp. at 6-7.)

To determine whether a communication was sent "'in connection with the collection of any debt,' courts should look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [sender] was attempting to collect a debt and was acting as a debt collector." *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2013); *Reese v. Ellis, Painter, Ratteree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012)). A demand for payment may be implicit "where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt." *Pinson*, 618 F. App'x at 553 (citing *Caceres*, 755 F.3d at 1303, n.2). District courts within the Eleventh Circuit have outlined several other factors to consider when making this

4

determination, including the nature of the relationship between the sender and receiver, whether the communication stated a balance due, whether the communication was sent in response to an inquiry or request by the debtor, and whether the communication was part of a strategy to make payment more likely. *McElveen v. Westport Recovery Corp.*, 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018) (citing *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1240-41 (S.D. Fla. 2015)); *Hamilton v. Avectus Health Care Sols., LLC*, No. 5:13-cv-01967-SGC, 2015 U.S. Dist. LEXIS 130983, at *12-13 (N.D. Ala. Sep. 29, 2015); *Davis v. Santander Consumer United States*, No. 1:11-CV-231-WSD-AJB, 2011 U.S. Dist. LEXIS 173568, at *11-14 (N.D. Ga. May 12, 2011). This analysis must be done through the lens of the "least sophisticated consumer." *Parker v. Midland Credit Mgmt.*, 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012) (When evaluating FDCPA claims, courts apply the "least sophisticated debtor standard[.]") (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)). The least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d. Cir. 1993)) (internal quotations omitted). "[T]his standard is an objective test designed to protect the vulnerable while preventing 'liability for bizarre or idiosyncratic interpretations of collection notices[.]'" *Parker*, 874 F. Supp 2d at 1356 (quoting *LeBlanc*, 601 F.3d at 1194).

5

The Court begins by addressing what it views as Defendant's weakest argument. Defendant urges the Court to find that its response letters do not fall within the ambit of the FDCPA because they were sent in response to Plaintiff's request for validation and thus their "animating purpose" was not to induce payment from Plaintiff. (Def. Brief at 7) (relying on *McElveen*, 310 F. Supp. at 1380) ("[C]ourts have found that letters sent for informational purposes, such as those 'sent in response to correspondence or an inquiry from a debtor are communications induced by the debtor and not the debt collector. Thus, they do not fall within the ambit of the FDCPA.'") (quoting *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1283 (M.D. Fla. 2015); citing *Goodson v. Bank of Am., N.A.*, 600 Fed. Appx. 422, 431 (6th Cir. 2015); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)). The Court declines to make this finding, and the explanation behind this decision has several layers. As an initial matter, the quotation from *McElveen* and *Dyer* is misleading and confusing. At face value, it includes the following logic and conclusion: letters sent for informational purposes fall outside the strictures of the FDCPA; letters sent in response to a debtor inquiry are sent for informational purposes; therefore, letters sent in response to a debtor inquiry fall outside the strictures of the FDCPA.[2] The first part of this logic is correct—in the Eleventh Circuit, letters sent

---

[2] The courts in *McElveen* and *Dyer* did not apply this logic; rather, they considered the fact that a communication was sent in response to a debtor's inquiry as merely one factor in the analysis of whether the communication was sent in connection with the collection of a debt. *See McElveen*, 310 F. Supp. at 1380; *Dyer*, 108 F. Supp. 3d at 1282.

for informational purposes only are not sent in connection with the collection of a debt. *See Robinson v. Santander Consumer USA Inc.*, Civil Action No. 1:11-cv-00230-CAP-LTW, 2011 U.S. Dist. LEXIS 173576, at *11-12 (N.D. Ga. July 25, 2011) (finding letter not sent in connection with debt collection because, "[o]ther than the statement that the letter 'is an attempt to collect a debt,' nothing in the plain language of the letter suggests to Plaintiff that Defendant is taking any action other than simply informing him of the changes in payment and communication procedures given the new servicer"). The second part of this logic, however, is an assumption based on two Sixth Circuit cases, *Grden* and *Goodson*. In those cases, the Sixth Circuit held that certain documents sent in response to the plaintiffs' respective inquiries did not violate § 1692e because they "were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." *Grden*, 643 F.3d at 172-73; *Goodson*, 600 F. App'x at 425, 432. To reach these holdings, the Sixth Circuit looked to the "animating purpose" of the debt collectors' communications to determine whether they were sent in connection with the collection of any debt. *See Grden*, 643 F.3d at 173 ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."). This "animating purpose" approach was implicitly rejected by the Eleventh Circuit in *Pinson*. *See* 618 F. App'x at 553-54 (reversing district court's dismissal of plaintiff's complaint based on letters' "animating purpose" of responding to plaintiff's requests because letters' language showed they were sent both as a response to plaintiff's requests and to demand payment). In *Pinson*, the Eleventh

Circuit found that letters sent from a debt collector in response to a plaintiff's debt validation inquiry constituted attempts to collect a debt:

> Each contained an implicit demand for payment, because they stated the amount of the debt, described how the debt could be paid, and informed [the plaintiff] how he could tender payment. . . . One letter stated that fees and costs would continue to be assessed until the loan delinquency was cured, and the other stated that the amount owed would continue to increase if [plaintiff] failed to reinstate the loan immediately. . . . Both letters expressly indicated that they were written in an attempt to collect a debt.

618 F. App'x at 554 (internal citations omitted). The court explained that "[a] communication can have more than one purpose, for example, providing information to a debtor as well collecting a debt." *Id.* at 553 (citing *Caceres*, 755 F.3d at 1302; *Reese*, 678 F.3d at 1217). Bound to Eleventh Circuit precedent, this Court cannot assume that every letter sent in response to a debtor's inquiry is for informational purposes only. As a result, the Court cannot accept the blanket conclusion that letters sent in response to a debtor inquiry fall outside the ambit of the FDCPA. Instead, the Court will engage in the factor analysis outlined above, thereby considering as one of several factors that the communications here were sent in response to Plaintiff's debt validation inquiry.

The Court now turns to the language of the response letters at issue here. They state, in relevant part:

> We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account. After reviewing the information you provided, our account notes, and information provided by the previous creditor, . . . we have concluded that our information is accurate. . . . We have also enclosed

> documents regarding the account. . . . [A]s previously requested by
> you, we will no longer be contacting you regarding this account by
> phone or in writing unless required by law or you request that we
> resume communications.

(*See* Doc. 5-1 at 2; Doc. 5-3 at 2.) They do not include a demand for payment,

threaten any consequences for failure to pay, or include any information about

where payments should be sent. For this reason, Defendant argues that the Court

should find in its favor. (Def. Brief at 9.) However, the Court cannot ignore that

the letters state the amounts owed on the debts[3] and explicitly direct Plaintiff's

attention to the enclosures. Therefore, the Court too will direct its attention to

those documents.

Enclosed with the first response letter is a debt collection disclosure as well

as Plaintiff's Capital One credit card statements which memorialize that debt.

(Doc. 5-1 at 3-11.) Enclosed with the second response letter is the same debt

collection disclosure as well as a letter and account statements from Comenity

Bank which memorialize Plaintiff's debt to Victoria's Secret and the sale of the

debt to Defendant. (Doc. 5-2 at 3-13.) The parties focus their discussions on the

disclosure, so the Court will do the same.[4] This document is titled "Important

---

[3] Specifically, the response letters state the "Original purchase balance[s]" of $543.45 and $355.14 and list the "Total payments" as "$0.00." (Doc. 5-1 at 3; Doc. 5-2 at 3.) A commonsense reading of these numbers together leads to the conclusion that no payments had been made on the debts and, therefore, that the original purchase balances are the amounts owed on the debts.

[4] To be sure, the Court has evaluated these creditor documents, and finds that the least sophisticated consumer would understand that their inclusion was for the purpose of validating the debts and not part of an attempt to collect the debts. *C.f. Flores v. Debski & Assocs., P.A.*, No. 21-cv-20992, 2021 U.S. Dist. LEXIS

Disclosure Information" and includes a disclaimer that states, "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." (Doc. 5-1 at 3; Doc. 5-2 at 3.) Below that disclaimer is a box titled "Important Contact Information," which includes Defendant's address where one can "Send Payments to" as well as the address and phone number of Consumer Support Services where one can "Send disputes or an instrument tendered as full satisfaction of a debt[.]" (Doc. 5-1 at 3; Doc. 5-2 at 3.) Defendant asks this Court to ignore this disclosure because it is merely attached to the letters, which do not allude to the debt collection language in the disclosure. (Def. Brief at 9.) This argument is unconvincing. Defendant does not cite to, nor is the Court aware of, any authority that shields a letter's enclosures from this analysis. On the contrary, relevant case law indicates that communications must be viewed in their entirety. *See, e.g., Reese*, 678 F.3d at 1217 (finding that a dunning letter and its three enclosures, sent from a law firm to a debtor, were sent in connection with the collection of a debt because, *inter alia*, one of the enclosures specifically stated that the law firm was attempting to collect a debt, and another enclosure stated that the law firm was acting as a debt collector attempting to collect a debt). Additionally, this Court is mindful of its obligation to view the

175174, at *8 (S.D. Fla. Sep. 14, 2021) (finding that defendant satisfied § 1692g's validation requirements by sending plaintiff, *inter alia*, "copies of his credit application and twelve months of credit card statements"). Indeed, Plaintiff asked for validation of the debts "under 15 U.S.C. 1692g," (Doc. 5-3 at 2), and she does not now take issue with these documents, which supports this finding.

communications from Defendant to Plaintiff through the lens of the least sophisticated consumer. Commonsense dictates that such a consumer would not ignore enclosures sent with a letter, especially when the letter directs the consumer right to them.

Defendant also asks the Court to disregard the disclosure as merely a vehicle for meaningless "boilerplate" language which cannot transform its purpose into one for debt collection. (Def. Brief at 8.) While this argument may be convincing under some circumstances, *see Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 802 (11th Cir. 2016) (finding that "'this communication is from a debt collector'" boilerplate language did not transform letter into one for debt collection because letter's stated purpose was "'to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments'"), the Court does not find it convincing here. Based on the factors enumerated by the Eleventh Circuit in *Pinson*, this disclosure contains an implicit demand for payment—it states the amount of the debt, describes how the debt may be paid, provides the phone number and address where payment may be sent, and expressly states that the letter is for the purpose of collecting a debt. *See* 618 F. App'x at 553. As for the factors enumerated by several district courts in this Circuit, this disclosure satisfies most but not all of them. On one hand, it does not include any statement that additional fees will accrue if payment is not tendered, and it was sent to Plaintiff in response to her request for validation. But on the other hand, it includes the balance due as well as a statement that Defendant (i.e., the sender) is

a debt collector attempting to collect a debt, and the nature of the relationship between Defendant and Plaintiff is that of debt collector and debtor. *See McElveen*, 310 F. Supp. at 1380; *Bohringer*, 141 F. Supp. 3d at 1240-41; *Hamilton*, 2015 U.S. Dist. LEXIS 130983, at *12-13; *Davis*, 2011 U.S. Dist. LEXIS 173568, at *11-14. So far, the scales are tipped in Plaintiff's favor. Adding more weight to Plaintiff's side of the scale is the fact that Defendant was not required to send this disclosure to Plaintiff in response to her inquiry but did so anyway. *See Himes*, 990 F. Supp. 2d at 66 ("To sufficiently validate a debt [pursuant to § 1692g], the debt collector need only demonstrate that the creditor has provided some evidence that the debtor owes the specific amount demanded; a credit card statement indicating the delinquent balance serves that purpose."); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (citing *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla.), *aff'd*, 66 F.3d 342 (11th Cir. 1995), *cert. denied*, 516 U.S. 1048 (1996)); *c.f. Reese*, 678 F.3d at 1217 (finding that a letter from law firm to consumers was intended to notify consumers of foreclosure and to demand payment of debt, noting that "Georgia law does not require a demand for payment of the debt to be included in a notice of foreclosure, but the law firm included one anyway."). Therefore, the Court finds that the response letters at issue here were sent, at least in part, as attempts to collect Plaintiff's purported outstanding debts. As a result, Plaintiff has alleged a plausible FDCPA claim.

III.    **CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's
Motion to Dismiss Plaintiff's Complaint, (Doc. 5), be **DENIED**.

**SO RECOMMENDED** April 1, 2024.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE

# Exhibit "B"

RECEIVED
ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 2 2 2024

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| **LEAHA WHITE** | ) | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **LVNV FUNDING LLC., DBA RESURGENT** | ) | |
| **CAPITAL SERVICES** | ) | 2:24-cv-00140-CDS-BNW |
| **Defendant,** | ) | |
| | ) | |

## I. INTRODUCTION

1. This is an action for actual and statutory damages brought by Plaintiff Leaha White (hereinafter "Plaintiff"), an individual consumer, against Defendant LVNV Funding LLC (hereinafter "LVNV") for violations of the Fair Debt Collection Practices Act, 15 U.S.C § 1692 et seq. (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II. JURISDICTION AND VENUE

2. The court has jurisdiction under 15 U.S.C § 1692k and 28 U.S.C § 1331. Venue in this District is proper as the Defendant transacts business in Nevada.

## III. PARTIES

3. Plaintiff is a natural person residing in the District of Nevada. Plaintiff is a consumer as defined by the Fair Debt Collection Practices Act, 15 U.S.C.§1692a(3).

4. Upon information and belief, LVNV's principal place of business is 6801 S. Cimarron Rd Dr Ste #424J, Las Vegas, Nevada.

5. LVNV is a debt collector who regularly collects or attempts to collect debts from consumers using the mail and telephone. Defendant regularly attempts to collect

1

consumers' debts alleged to be due to another. LVNV is a "debt collector" as
defined by the FDCPA, 15 U.S.C § 1692a(6).

## IV. FACTS OF THE COMPLAINT

6. LVNV is attempting to collect debts that arose from transactions in which the money,
property, insurance or services which are the subject of the transactions are primarily for
personal, family or household purposes.

7. On December 18, 2023, Plaintiff wrote LVNV a letter disputing the debts alleged to be
owed to Comenity Capital Bank and Credit One Bank and requested validation of the
alleged debts. **(Please see Exhibit A).**

8. Plaintiff notified LVNV in her letter that the only convenient way to contact her was
via email.

9. On or around December 26, 2023, the letter was delivered via certified mail to LVNV
with tracking number 9589071052700621183936. **(Please see Exhibit B).**

10. On December 29, 2023, LVNV sent correspondence to the Plaintiff via mail stating,
"this is an attempt to collect a debt and any information will be used for that purpose."
LVNV responded in a way that they know or should have known to be inconvenient to
the Plaintiff. **(Please see Exhibit C).**

11. LVNV's correspondence was in violation of 15 U.S.C § 1692c(a)(1) for
communicating with the Plaintiff at an unusual time or place known, or which should be
known to be inconvenient to the Plaintiff.

12. Plaintiff has and continues to suffer actual damages as a result of the illegal attempts
to collect on the alleged debts by LVNV in the form of anxiety, decreased ability to
focus on tasks while at work, frustration, emotional distress, amongst other negative
emotions, as well as damage to FICO scores.

13. LVNV has disturbed plaintiffs' peace and blood pressure. The anxiety and worry
were caused by concerns if LVNV was going to continue their unlawful collection
activity.

2

## IV. CLAIM FOR RELIEF

14. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

15. **LVNV violated the FDCPA. LVNV's violations include, but are not Limited to, the following:**

16. LVNV intentionally communicated with the Plaintiff in connection with collection of alleged debts at a time and place that was known by LVNV to be an inconvenience to the Plaintiff, thus violating 15 U.S.C § 1692c(a)(1).

17. As a result of the above violation of the FDCPA, LVNV is liable to Plaintiff for actual damages and statutory damages pursuant to 15 U.S.C § 1692k.

## VII. JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands a jury trial and requests that judgment be entered in favor of Plaintiff and against LVNV for:

A. Judgment for the violations occurred for violating the FDCPA;

B. Actual damages;

C. Statutory damages;

D. For such other and further relief as the Court may deem just and proper.

Dated: January 22, 2024        Respectfully Submitted,

/s/ Leaha White
4939 Abundance Street
Las Vegas, Nevada 89031
702-750-7988 (Phone #)
Email: Leahaawhite1990@gmail.com

3

# Exhibit A

Leaha White
4939 Abundance St.
Las Vegas, NV 89031

LVNV Funding LLC
P.O. Box 10497
Greenville, SC 29603

Dispute of Alleged Debt & Validation Request.

To Whom it May Concern,

I am writing this letter to inform you that I dispute the alleged debts in the amounts of $898.26 and $4,169.40. I will need validation of this alleged debt sent to me via email since this is the only convenient and accessible method of communication for me at this time. Please send to the following email address: leahaawhite1990@gmail.com.

Sincerely
Leaha White.

1/16/24, 8:59 AM

## Exhibit B

image.png

**Tracking Number:**

## 9589071052700621183936

⬚ Copy ⚡ Add to Informed Delivery

---

**Latest Update**

Your item has been delivered to an agent for final delivery in
GREENVILLE, SC 29603 on December 26, 2023 at 6:37 am.

---

**Get More Out of USPS Tracking:**

🔍 USPS Tracking Plus®

---

● **Delivered to Agent**
Delivered to Agent for Final Delivery
GREENVILLE, SC 29603
December 26, 2023, 6:37 am

**Arrived at Post Office**
GREENVILLE, SC 29601
December 26, 2023, 6:34 am

**In Transit to Next Facility**
December 25, 2023

**Arrived at USPS Regional Facility**
GREENVILLE SC DISTRIBUTION CENTER
December 23, 2023, 1:33 pm

**Departed USPS Regional Facility**
LAS VEGAS NV DISTRIBUTION CENTER
December 20, 2023, 9:10 am

**Arrived at USPS Regional Origin Facility**
LAS VEGAS NV DISTRIBUTION CENTER
December 19, 2023, 9:13 pm

**USPS picked up item**
NORTH LAS VEGAS, NV 89032
December 18, 2023, 4:02 pm

rtice Tracking History

Exhibit C

PO Box 510090
Livonia MI 48151-6090



PJ85DJ02400121

LEAHA WILLIAMS
4939 ABUNDANCE ST
NORTH LAS VEGAS, NV 89031-0958

| |
|---|
| Account Number: ************0268 |
| Original Creditor: Credit One Bank, N.A. |
| Current Owner: LVNV Funding LLC |
| Reference ID: 691415012 |
| Balance: $898.26 |
| Accountholder Name: Leaha Williams |

December 29, 2023

Dear Leaha Williams,

We have received a recent inquiry regarding the above-referenced account and have enclosed the account summary which provides verification of debt.

For further assistance, please contact one of our Customer Service Representatives toll-free at 1-866-464-1187.

Sincerely,

Resurgent Capital Services L.P.

Enclosure

### Please read the following important notices as they may affect your rights.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC cannot sue you for it. If you do not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid.



*Hours of Operation*
8:00AM-9:00PM EST
Monday - Thursday
8:00AM-7:00PM EST
Friday
9:00AM-5:00PM EST
Saturday - Sunday



*General Disputes/Correspondence*
PO Box 10497
Greenville, SC 29603-0497
*Credit Bureau Disputes*
PO Box 1269
Greenville, SC 29602



*Contact Numbers*
Toll Free Phone
1-866-464-1187
Toll Free Fax
1-866-467-0163



*Customer Portal*
Resurgent.com

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number 4447 9623 8498 0268
January 09, 2020 to February 08, 2020

**Exhibit C(1)**



## SUMMARY OF ACCOUNT ACTIVITY

| | |
|---|---|
| Previous Balance | $639.25 |
| Payments − | $0.00 |
| Other Credits − | $0.00 |
| Purchases + | $0.00 |
| Cash Advances + | $0.00 |
| Fees Charged + | $43.25 |
| Interest Charged + | $15.76 |
| **New Balance** | **$898.26** |
| Credit Limit | $500.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 02/08/20 |
| Days in Billing Cycle | 31 |

### QUESTIONS?
Call Customer Service or Report
a Lost or Stolen Credit Card     1-877-825-3242
Outside the U.S. Call            1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $898.26 |
| Past Due Amount | $238.00 |
| Amount Due This Period | $695.26 |
| Minimum Payment Due | $898.26 |
| Payment Due Date | 03/04/20 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 1 months | $898.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

## TRANSACTIONS

| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | | | **Fees** | |
| F572700DN000CYLAC | 02/08 | 02/08 | ANNUAL FEE     03/20 THROUGH 03/20 | 8.25 |
| | 02/08 | 02/08 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 02/08 | 02/08 | Interest Charge on Purchases | 15.76 |
| | 02/08 | 02/08 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **15.76** |

| 2020 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2020 | $86.50 |
| Total interest charged in 2020 | $30.62 |

Your account is currently closed.

## INTEREST CHARGE CALCULATION

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 25.15%(v) | $752.07 | $15.76 |
| Cash Advances | 25.15%(v) | $0.00 | $0.00 |

(v) = Variable Rate

5385     JBH     001  7  8   200207 0     CXPAGE 1 of 1     2 0  5727  9620  M165  O1GR5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.



**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: | 4447 9623 8498 0268 |
| New Balance: | $898.26 |
| Minimum Payment Due: | $898.26 |
| Payment Due Date: | 03/04/20 |

For address, telephone and email changes, please complete the reverse side.
Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** $          .



CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

LEAHA WILLIAMS
APT 1070
3940 SCOTT ROBINSON BLVD
N LAS VEGAS NV 89032-7873

0000000 0089826 0089826 4447962384980268 7

# Exhibit C (2)

**ACCOUNT SUMMARY REPORT**
12/28/2023 1:04:30 PM

*This account summary has been prepared by Resurgent Capital Services on behalf of LVNV Funding LLC.
It is not a credit card or other account statement from the original creditor.*

| Borrower Information | | Current Account Information | |
|---|---|---|---|
| **Name:** | LEAHA WILLIAMS | **Owner:** | LVNV Funding LLC |
| **Address:** | 4939 Abundance St | **Resurgent Reference #:** | 691415012 |
| **City:** | North Las Vegas | **Original Creditor:** | Credit One Bank, N.A. |
| **State:** | NV | **Account Number:** | XXXXXXXXXXXX0268 |
| **Zip Code:** | 89031-0958 | **Current Balance Due:** | $898.26 |
| | | **Date of Last Payment:** | 06/10/2019 |

| Historical Account Information | |
|---|---|
| The original creditor for this account was: | Credit One Bank, N.A. |
| | P.O. Box 98873 |
| | Las Vegas, NV 89193 |
| The origination date with original creditor was: | 02/25/2018 |
| The account charge-off date was: | 02/09/2020 |
| The account charge-off amount was: | $898.26 |
| The account was acquired on or about: | 03/18/2020 |
| The account balance at time of acquisition: | $898.26 |

*This communication is from a debt collector and this is an attempt to collect a debt. Any information obtained will be used for that purpose.*



Page 1 of 1



*Exhibit C (3)*

PO Box 510090
Livonia MI 48151-6090





PJ85DX02300208

LEAHA WILLIAMS
4939 ABUNDANCE ST
NORTH LAS VEGAS, NV 89031-0958

| |
|---|
| Account Number: ***************2876 |
| Original Creditor: Comenity Capital Bank |
| Current Owner: LVNV Funding LLC |
| Reference ID: 744214111 |
| Balance: $1,169.40 |
| Accountholder Name: Leaha Williams |

December 29, 2023

Dear Leaha Williams,

Resurgent Capital Services L.P. manages the above referenced account for LVNV Funding LLC and has initiated a review of the inquiry recently received.

For further assistance, please contact one of our Customer Service Representatives toll-free at 1-866-464-1187.

Sincerely,

Resurgent Capital Services L.P.

**Please read the following important notices as they may affect your rights.**
This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC cannot sue you for it. If you do not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid.











*Hours of Operation*
8:00AM-9:00PM EST
Monday - Thursday
8:00AM-7:00PM EST
Friday
9:00AM-5:00PM EST
Saturday - Sunday

*General Disputes/Correspondence*
PO Box 10497
Greenville, SC 29603-0497
*Credit Bureau Disputes*
PO Box 1269
Greenville, SC 29602

*Contact Numbers*
Toll Free Phone
1-866-464-1187
Toll Free Fax
1-866-467-0163

*Customer Portal*
Resurgent.com

# Exhibit C (4)



ACCOUNT SUMMARY REPORT
12/29/2023 12:54:29 PM

*This account summary has been prepared by Resurgent Capital Services on behalf of LVNV Funding LLC. It is not a credit card or other account statement from the original creditor.*

| Borrower Information | | Current Account Information | |
|---|---|---|---|
| **Name:** | LEAHA WILLIAMS | **Owner:** | LVNV Funding LLC |
| **Address:** | 4939 Abundance St | **Resurgent Reference #:** | 744214111 |
| **City:** | North Las Vegas | **Original Creditor:** | Comenity Capital Bank |
| **State:** | NV | **Account Number:** | XXXXXXXXXXXXXX2876 |
| **Zip Code:** | 89031-0958 | **Merchant:** | My Place Rewards Credit Card |
| | | **Current Balance Due:** | $1169.40 |
| | | **Date of Last Payment:** | 04/21/2019 |

| Historical Account Information | |
|---|---|
| The original creditor for this account was: | Comenity Capital Bank PO Box 182273 Columbus, OH 43218 |
| The origination date with original creditor was: | 12/20/2017 |
| The account charge-off date was: | 11/30/2019 |
| The account charge-off amount was: | $1,169.40 |
| The account was acquired on or about: | 12/29/2022 |
| The account balance at time of acquisition: | $1,169.40 |

*This communication is from a debt collector and this is an attempt to collect a debt. Any information obtained will be used for that purpose.*

